*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AKOUAVI KAPADE AFOLABI, | : |
| Petitioner, | : Civil Action No. 13-3396 (JLL) |
| v. | : **OPINION** |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

**LINARES**, District Judge:

Presently before the Court is the motion of Akouavi Kapade[1] Afolabi ("Petitioner") to vacate, set aside, or correct her sentence brought pursuant to 28 U.S.C. § 2255, (ECF No. 1), to which Respondent, United States of America ("Respondent"), filed a response (ECF No. 7). Also before the Court is Petitioner's Motion for the Appointment of Counsel. (ECF No. 8). For the following reasons, the Court will grant Petitioner an evidentiary hearing as to the issue of whether counsel proceeded to trial against Petitioner's expressed desire to plead guilty, deny Petitioner's remaining grounds for relief, and grant Petitioner's request for counsel.

**I. BACKGROUND**

Because of the nature of the claims Petitioner raises in her § 2255 motion, only a brief recitation of the facts of Petitioner's underlying conviction is necessary here. On Direct Appeal,

---

[1] In various trial documents, this name was spelled "Kpade." For the purposes of this opinion, however, this Court will use the spelling Petitioner used in the caption to her § 2255 motion, "Kapade." (ECF No. 1).

the Third Circuit summarized the facts of the case as follows:

> From October 2002 through September 2007, [Petitioner] (a citizen of the West African nation of Togo), her former husband and her son brought more than 20 West African girls, aged 10 to 19, from poor villages in Togo and Ghana into the United States on fraudulently obtained visas, under the pretense that the girls would go to school or learn a trade. . . . Instead, the girls worked in hair-braiding salons for up to 16 hours a day, six or seven days a week, and turned over all their earnings to [Petitioner and her co-defendants].
>
> At [Petitioner's] trial, the Government introduced evidence that the girls were physically, psychologically and sexually abused in both Africa and the United States. [Petitioner] and her co-conspirators beat the girls, sometimes at length and with extreme violence, to ensure their compliance. [Petitioner's] former husband forced at least three of the girls to have sex with him and transported another girl, who was under the age of 18, from New Jersey to North Carolina in order to have sex with her. When the girls tried to tell [Petitioner] about these sexual assaults, [Petitioner] either refused to listen to them or blamed them for the assaults.
>
> In order to demonstrate the involuntary nature of the girls' servitude in the United States, the Government also produced evidence that [Petitioner] and her co-conspirators isolated the girls from their families, exploited their youth and lack of knowledge of English, and induced deep fear and shame at the prospect of being returned to Africa in disgrace. [Petitioner] and her co-conspirators confiscated the girls' passports and other identification to prevent their independent travel. On the extremely rare occasions that the girls were permitted to speak to their families in Africa, they were pressed into lying about their whereabouts; one girl was forced to tell her parents she was succeeding in school (which she was in fact not allowed to attend), and another that she was living in Germany. The girls testified at trial that they were unable to leave [Petitioner's] control because they feared her, did not know anyone else, possessed no documentation and believed [Petitioner] would do something to harm their families. Indeed, one girl testified that [Petitioner's] treatment prompted her to contemplate suicide.
>
> . . . .
>
> [At trial t]he Government [also] introduce[d] evidence that,

2

> while in Togo, [Petitioner] beat the girls and demonstrated voodoo practices in order to threaten and intimidate them . . . prior to the indictment period[.]

*United States v. Afolabi*, 508 F. App'x 111, 112-14 (3d Cir. 2013) (record citations omitted).

Based on these background facts, Petitioner was indicted on October 4, 2007 with charges including conspiring to harbor illegal aliens for the purpose of her own financial gain and visa fraud. (Criminal Action No. 07-785 at ECF No. 22). On January 15, 2009, Petitioner was indicted, by way of superseding indictment, on charges including the aforementioned conspiracy, visa fraud, smuggling illegal aliens, harboring illegal aliens, forced labor, and trafficking with respect to forced labor. (Criminal Action No. 07-785 at ECF No. 41). Although Petitioner was offered a plea agreement in which more than a dozen of the twenty two charges would have been dismissed and Petitioner subject to a Guidelines offense level of 32 at sentencing, Petitioner rejected that plea and chose to proceed to trial. (Plea Agreement attached to ECF No. 7 at 1, 6-8).

Following a nearly month-long trial during which the jury heard testimony establishing the facts recounted above, the jury returned a verdict of guilty as to all twenty two counts with which Petitioner was charged. (Criminal Action No. 07-785 at ECF No. 178). This Court thereafter sentenced Petitioner to 324 months' imprisonment, approximately four million dollars in restitution, and three years of supervised release following her prison term. (Criminal Action No. 07-785 at ECF No. 214, 215). Petitioner appealed, arguing that this Court erred in admitting the voodoo-related evidence and in denying her motion for a judgment of acquittal. *See Afolabi*, 508 F. App'x at 112. The Third Circuit affirmed, finding that any prejudice which resulted from the voodoo evidence was corrected by a limiting instruction this Court gave to the jury and that even

3

had it been error to admit that evidence, that error would have been harmless in light of the "overwhelming evidence" produced at trial. *Id.* at 118. The Third Circuit likewise rejected Petitioner's argument that without the pre-indictment period evidence of abuse the Government could not prove that Petitioner had coerced her victims as required by the forced labor and trafficking counts. *Id.* Petitioner thereafter filed the instant § 2255 motion on May 30, 2013.

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a Constitutional violation, in order to merit relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, (or) an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir.) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

4

B. Analysis

1. **Ineffective Assistance of Counsel**

Petitioner argues that her trial counsel was constitutionally ineffective for various reasons. Claims of ineffective assistance of counsel arise under the Sixth Amendment and are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). Second, a petitioner must show that counsel's deficient performance prejudiced her defense such that counsel's errors were so serious as to "deprive [the petitioner] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating counsel's conduct for deficiency, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Petitioner must therefore show that her counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances. *Id.* Reasonableness in this context is determined based on the facts of Petitioner's particular case, viewed as of the time of the conduct Petitioner alleges was ineffective. *Id.* Judicial scrutiny of counsel's performance "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even if Petitioner shows that counsel was deficient, she must still affirmatively demonstrate that counsel's deficiency prejudiced her defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the

5

proceeding." *Id.* at 693. Instead, Petitioner must show that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." *Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010) (quoting *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999)). Absent exceptional circumstances, where the evidence of a Petitioner's guilt was established by overwhelming evidence, the petitioner cannot show that she was prejudiced by counsel's mistakes unless she can produce "a considerable amount of new, strong evidence to undermine" [her] conviction. *Id.*; *see also Copenhafer v. Horn*, 696 F.3d 377, 390 (3d Cir. 2012) ("[i]n light of the overwhelming evidence . . . we agree . . . that [the petitioner] cannot show he was prejudiced"). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," it is often appropriate for the Court to first address the prejudice prong where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

Petitioner first asserts that "her convictio[n] was coerced. Movant's Attorney failed to provide pertinent information which would have been favorable to Movant's defense." (ECF No. 1 at 5). Petitioner provides no facts or context in addition to this statement, neither identifying what pertinent information was not provided during trial nor specifying how these unknown facts prejudiced her defense. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting

6

factual allegations," the petition is insufficient to warrant even an evidentiary hearing, let alone habeas relief. *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010); *accord United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988). As Petitioner provides no factual matter regarding this claim, and presents no more than an unadorned conclusion that counsel was deficient for failing to provide unspecified information, Petitioner's first claim is patently insufficient to establish a claim for ineffective assistance of counsel, especially in light of the overwhelming evidence of guilt presented at trial. *Palmer*, 592 F.3d 386, 395.

Petitioner then asserts that "[d]ue to severe language barrier and co[u]nsel's failure to provide Movant with a clear and precise understanding of proceedings, Movant was prejudiced against and could not formulate an adequate defense or communicate her concerns effectively." (ECF No. 1 at 8). Petitioner again provides no further factual information or context. To the extent that her claim is meant to suggest that counsel was ineffective for failing to ensure that she understood proceedings, Petitioner's claim is directly belied by the record. Throughout the proceedings before this Court, Petitioner was assisted by an Ewe interpreter who translated the proceedings as they occurred. (*See, e.g.*, Criminal Action No. 07-785 at ECF No. 48, 64, 214). There is nothing in the record to suggest that Petitioner, with the aid of her interpreter, was unable to understand the proceedings. Petitioner did not raise any lack of understanding to this Court, nor did she at any point express dissatisfaction with her attorney or the interpreter with respect to her understandings of the proceedings. As Petitioner has otherwise provided no factual background for this claim, and merely asserts the legal conclusion that counsel was constitutionally ineffective, this claim, too, must be denied. *Palmer*, 592 F.3d 386, 395.

Petitioner also argues that counsel "was also ineffective for failing to present mitigating evidence. Also by his failure to investigate or prepare for sentencing. His failure to object to witness testimony in which there was little or no substance. Due to co[u]nsel['s] misrepresentation[s] and errors, Movant feels that she received a harsher sentence." (ECF No. 1 at 9). As with the previous two claims, Petitioner presents no further factual information and fails to state what testimony, if any, should have received counsel's objection, or what mitigating evidence counsel could have presented at sentencing. As Petitioner's "bald assertions and conclusory allegations do not afford sufficient ground for an evidentiary hearing," they are certainly insufficient to merit relief. *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008); *see also Thomas*, 221 F.3d at 437. This Court notes, however, that the record is clear that Petitioner's counsel obviously did prepare for sentencing, and made numerous arguments, however unsuccessful some may have been, on her behalf. (*See* Sentencing Transcript, Document 2 attached to ECF No. 7 at 10-69). Although it is true that counsel chose not to submit certain e-mails on Petitioner's behalf, counsel asserted that that decision had been made after discussion with Petitioner, and Petitioner in no way indicated that she disagreed with that decision. (*Id.* at 68). Without some factual information to support the assertion that these excluded documents would have had some effect upon Petitioner's sentence, however, counsel's choice to exclude them cannot be said to have been deficient, and this Court certainly cannot find prejudice.[2] *Palmer*,

---

[2] This Court would note that the Court specifically considered, and rejected, the argument at sentencing that Petitioner's acts may have had ultimately positive outcomes for her victims in so much as they would be able to become residents or citizens of the United States in spite of the indignities suffered as forced laborers under Petitioner's schemes. (*See* Sentencing Transcript at 86). To the extent that Petitioner's "mitigating evidence" would have presented similar information, this Court doubts, in light of the overwhelming evidence and the nature of Petitioner's crimes, that any such evidence would have been availing for Petitioner at sentencing.

592 F.3d 386, 395.

### 2. An evidentiary hearing is required as to Petitioner's remaining claim that counsel proceeded to trial after being informed Petitioner wished to plead guilty

Petitioner's remaining claim[3] asserts that counsel proceeded to trial against Petitioner's express desire to plead guilty and, in so recommending, counsel failed to provide Petitioner with sufficient information to make the decision as to whether to plead guilty.[4] The habeas statute requires an evidentiary hearing "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). Where

---

[3] Although the Court construes this as a single claim, Petitioner splits this claim into parts of her grounds two and four in which she argues that she "disagree[d] with her co[u]nsel regarding going forward to trial, but was ignored by counsel on her wishes not to. Petitioner[']s right to forego trial was taken away from her and in turn the trial had an adverse effect on the outcome of her sentencing," and "[c]ounsel failed to seek a favorable plea offer on Movant[']s behalf. Counsel further failed to fully explain to Movant the risks as to sentence to be imposed. Counsel did not provide his client with a 'pretty good idea' of what she would be facing at trial. Therefore, Movant proceeded against her expressed wishes, without fully understanding the consequences. Counsel's advice fell below an objective standard of reasonableness, rendering him ineffective." (ECF No. 1 at 6, 9).

[4] To the extent that Petitioner wished to raise a claim that counsel did not negotiate for a more favorable plea offer than the one provided by the Government, this Court notes that a criminal defendant has "no right to be offered a plea . . . nor a federal right that the judge accept it." *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1388 (2012). Without some evidence that the Government did or would have offered a more "favorable" plea offer, which Petitioner does not even assert, let alone show, Petitioner cannot established that she was prejudice by counsel's alleged "failure" to secure such a deal. *See, e.g., Missouri v. Frye*, --- U.S. ---, ---, 132 S. Ct. 1399, 1409 (2012). Any such claim by Petitioner would therefore fail, and relief is denied as to Petitioner's claim that counsel did not obtain a better deal for her.

the record, as supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by a petitioner or indicate that the petitioner is not entitled to relief, no hearing is required. *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546 (evidentiary hearing only necessary where a petitioner's claims are not conclusively resolved by the record). For the reasons previously provided, Petitioner's first three claims are without merit, and no evidentiary hearing is therefore required as to those claims. Petitioner's final claim, however, regarding her desire to plead guilty, cannot clearly be determined on the current record.

Petitioner asserts that her counsel was ineffective both in that he did not give adequate advice as to the potential sentencing exposure if Petitioner was found guilty at trial and for failing to follow her expressed wish to plead guilty, resulting in a harsher sentence than otherwise would have resulted. As the Third Circuit explained in *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014),

> The Court has re-emphasized that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to a plea-bargaining process." *Lafler v. Cooper*, --- U.S. ---, --- 132 S. Ct. 1376, 1384 (2012).
>
> When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.' *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969

10

> F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S. Ct. 1340 (2014). We have identified potential sentencing exposure as an important factor in the decision[-]making process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent. . . ." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).

Where a petitioner shows that counsel's actions fell below an objective standard of reasonableness in either advising petitioner as to a potential plea, or in rejecting a plea Petitioner otherwise would have accepted, *see, e.g., Frye*, 132 S. Ct. at 1409, the petitioner must still show that this failure prejudiced the petitioner. *Lafler*, 132 S. Ct. at 1384-85. This requires Petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Id.* at 1384. Thus, a petitioner claiming that counsel's deficient actions led to the loss of the opportunity to plead pursuant to a plea bargain must show that the offer would have been accepted by the petitioner, the prosecution would not have withdrawn the offer, the court would have accepted its terms, and either the conviction or sentence under the offer's terms would have been less severe than that imposed after trial. *Id.* at 1385.

Here, Petitioner alleges that, had counsel competently advised her of the risks of

11

proceeding to trial and listened to her express wishes, she would have pled guilty according to the terms of the offered plea agreement. Assuming without deciding that this Court would have accepted the terms of that plea agreement and the Government would not have withdrawn the offer, the terms of the plea agreement would result in a Guidelines level of 32 (as opposed to the 41 level found at sentencing) and more than a dozen of the charges of which Petitioner was convicted would have been dismissed. (Plea Agreement attached to ECF No. 7 at 1, 6-8). Clearly, then, if the offer had been accepted by all parties, both the conviction and sentence would have been less harsh, and prejudice likely therefore resulted from the decision to proceed to trial.

The question, then, is whether the rejection of the plea was the result of deficient advice on the part of counsel. Plaintiff alleges that counsel did not give her a sufficient understanding of the consequences of proceeding to trial, and ultimately refused to enter the guilty plea she wished to pursue.[5] Counsel, however, certifies that he communicated the details of the offer to Petitioner, but she "was not interested in pleading guilty and denied her guilt." (Document 1 attached to ECF No. 7 at 1). As there is nothing in the trial record to reflect what occurred between counsel and Petitioner during those discussions, the record is insufficient to determine whether counsel acted deficiently, and this Court is left with Petitioner's and counsel's conflicting accounts. As this matter cannot be decided based solely on the information in the record, as supplemented by

---

[5] This Court recognizes that, to some extent, the claims Petitioner raises contradict each other. Petitioner's assertion that counsel failed to obtain an adequate plea deal during negotiations with the Government does suggest that she found the deal which she now claims she would have accepted unsatisfactory. Likewise, Petitioner's claim that she received inadequate advice as to whether to proceed to trial suggests that, regardless of the quality of that advice, she chose to go to trial as a result of the advice, which would appear to conflict with the assertion that she wished to plead guilty. These apparent contradictions, however, are not, in and of themselves, sufficiently dispositive of Petitioner's claims.

12

this Court's recollection of Petitioner's case, an evidentiary hearing is required to resolve Petitioner's final claim. *See Booth*, 432 F.3d at 546. Because an evidentiary hearing is necessary to resolve Petitioner's final claim, this Court will grant her request for the appointment of counsel in the interests of justice.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a proceeding under § 2255 unless she has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As those of Petitioner's claims which the Court is denying without an evidentiary hearing are without merit, she has failed to make a substantial showing that she was denied a constitutional right as to the denied claims. Because Petitioner has failed to make such a showing, no certificate of appealability shall issue as to those claims.

## IV. CONCLUSION

For the reasons stated above, this Court will grant Petitioner's request for an evidentiary hearing as to Petitioner's claim that counsel proceeded to trial against her wishes, will grant Petitioner's request for the appointment of counsel, and will deny Petitioner's remaining claims for relief under 28 U.S.C. § 2255. An appropriate order follows.

_____
Hon. Jose L. Linares, U.S.D.J.